UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------
                            )   COURT FILE
UNITED STATES of AMERICA    )   NO. 19-CR-118 (ECT/DTS)
                            )
         vs.                )   Courtroom 3B
                            )   Wednesday, July 24, 2019
(1) WILLIE ROY EVANS        )   Minneapolis, Minnesota
                            )   2:00 P.M.
------------------------------------------------------------


**C H A N G E   O F   P L E A**


BEFORE THE HONORABLE ERIC C. TOSTRUD
UNITED STATES DISTRICT JUDGE



**A P P E A R A N C E S:**


**For the Government:**   **OFFICE OF THE U.S. ATTORNEY**
                      By:  SAMANTHA H. BATES
                           W. ANDERS FOLK
                           Assistant U.S. Attorneys
                      600 United States Courthouse
                      300 South Fourth Street
                      Minneapolis, Minnesota  55415



**For the Defendant:**   **DORSEY & WHITNEY, LLP**
                      By:  R.J. ZAYED, ESQUIRE
                      50 South Sixth Street - Suite 1500
                      Minneapolis, Minnesota  55402-1498



**TIMOTHY J. WILLETTE, RDR, CRR, CRC**
Official Court Reporter - United States District Court
Warren E. Burger Federal Building & U.S. Courthouse
316 North Robert Street - Suite 146
St. Paul, Minnesota  55101
651.848.1224

```
 1        (2:00 p.m.)

 2                    P R O C E E D I N G S

 3                      IN OPEN COURT

 4        (Defendant present)

 5        THE COURT:  Good afternoon, everyone.  Please be

 6   seated.

 7        We're here this afternoon in United States of

 8   America versus Willie Roy Evans, Criminal File Number

 9   19-118.

10        I'll ask counsel to note their appearances for the

11   record, please, starting with the Government.

12        MS. BATES:  Good afternoon.  Samantha Bates along

13   with Anders Folk for the United States.

14        THE COURT:  Good afternoon.

15        MR. ZAYED:  Good afternoon, Your Honor.  R.J.

16   Zayed on behalf of Willie Roy Evans, who is present and

17   before the Court.

18        THE COURT:  Good afternoon.

19        All right.  Mr. Evans, I understand that you're

20   here today because you've decided to enter a guilty plea in

21   this case, is that correct?

22        THE DEFENDANT:  Yes.

23        THE COURT:  All right.  As part of this process,

24   I'm going to have to ask you a number of questions and

25   you're going to have to answer those questions under oath,
```

1   so what I'm going to ask you to do is come up to the witness

2   stand here if you could, Mr. Evans, and stand between the

3   railing and the seat in that witness box if you could for

4   just a second while our courtroom deputy swears you in.  So

5   if you could just stand right there for one second.

6

7                    **WILLIE ROY EVANS, DEFENDANT, SWORN**

8              THE DEFENDANT:  Yes.

9              THE COURT:  Thank you.  You can be seated now.

10  Right there.  Sorry.

11             MR. ZAYED:  Your Honor, may I --

12             THE COURT:  Yes, absolutely, Mr. Zayed.

13        (Mr. Zayed joins the defendant at the witness stand)

14

15                    **E X A M I N A T I O N**

16  BY THE COURT:

17  Q.  Mr. Evans, I want to warn you that because you're under

18  oath, if you say anything that's false, you can be

19  prosecuted now for the separate crime of perjury and the

20  Government could use against you in that prosecution any

21  false statements that you give today under oath, so it's

22  important that you be truthful in everything you say today,

23  okay?

24  A.  Yes.

25  Q.  All right.  If you'd like to talk with Mr. Zayed at

1    anytime today, you're welcome to do so.  If I ask you a

2    question and you're not certain how to answer my question,

3    just tell me that you'd like to talk to him and I'll give

4    you as much time as you need.

5              Do you understand that?

6    A.  Yes.

7    Q.  If there's anything I say today that you don't hear or

8    understand, please tell me so that I can make the question

9    clear for you.  Please don't answer a question that confuses

10   you or that you don't hear clearly, and please don't tell me

11   you understand something unless you really do understand it,

12   okay?

13   A.  Yes, sir.

14   Q.  All right.  The most important thing for you to

15   understand here today, Mr. Evans, is that if you do plead

16   guilty and if I accept your plea, you'll stand -- you'll not

17   be able to change your mind later.  You'll be stuck with

18   your plea.  So if anything happens today that confuses you

19   or worries you, you should get help from Mr. Zayed before

20   you plead guilty, because after you plead guilty it may be

21   too late to help you.

22             Do you understand that?

23   A.  Yes, sir.

24   Q.  All right.  I have to begin this afternoon by asking a

25   few questions to make certain that you're competent to enter

1    a guilty plea.

2             Please state your full name.

3    A.  Willie Roy Evans.

4    Q.  Have you used an alias or any other name before,

5    Mr. Evans?

6    A.  No, sir.

7    Q.  How old are you?

8    A.  42 years old.

9    Q.  And how far did you go in school?

10   A.  First year of college.

11   Q.  Are you a United States citizen?

12   A.  Yes, sir.

13   Q.  Do you have any trouble speaking or understanding the

14   English language?

15   A.  No, sir.

16   Q.  Are you able to read fairly well?

17   A.  Yes.

18   Q.  Have you consumed any alcohol in the last 24 hours?

19   A.  No, sir.

20   Q.  How about drugs?  Have you consumed any drugs or

21   medications in the last 24 hours?

22   A.  No, sir.

23   Q.  Are you generally in good health?

24   A.  Yes.

25   Q.  How do you feel today?  Are you able to think clearly?

1    A.  Yes, sir.

2    Q.  You're represented in this case by Mr. Zayed.  Have you

3    fully discussed the charges against you with Mr. Zayed?

4    A.  Yes.

5    Q.  And have you told Mr. Zayed everything you want him to

6    know about this case?

7    A.  Yes, sir.

8    Q.  And are you fully satisfied with the advice and services

9    that you have received from him?

10   A.  Yes.

11          THE COURT:  Mr. Zayed, have you had sufficient

12   time to investigate this case and discuss it with Mr. Evans?

13          MR. ZAYED:  I have, Your Honor.

14          THE COURT:  And based on your discussions, are you

15   satisfied that Mr. Evans understands the charges against him

16   and the range of punishments that he'll face if he pleads

17   guilty here today?

18          MR. ZAYED:  I am satisfied, Your Honor.

19          THE COURT:  And based on your dealings with

20   Mr. Evans, are you satisfied that he is competent to make a

21   decision about whether to plead guilty?

22          MR. ZAYED:  Yes, Your Honor.  He is competent

23   based on my observations and interactions with him.

24          THE COURT:  Okay.  Thank you.

25

1    BY THE COURT:

2    Q.  Mr. Evans, have you received a copy of the indictment,

3    which is the document that contains the written charges the

4    Government has made against you in this case?

5    A.  Yes, sir.

6    Q.  Have you read that indictment?

7    A.  Yes.

8    Q.  And has Mr. Zayed explained the charges made against you

9    in that indictment?

10   A.  Yes, sir.

11   Q.  And has he answered all of your questions about those

12   charges?

13   A.  Yes, sir.

14   Q.  Mr. Evans, you've told me that you wish to plead guilty

15   here today, and if you do enter a guilty plea, you'll be

16   giving up a number of rights that you have, rights

17   guaranteed by our Constitution.  And one of the things that

18   I'm obligated to do here today is to review with you those

19   rights that you will be giving up, so I'm going to do that

20   now, okay?

21   A.  Yes, sir.

22   Q.  All right.  First, Mr. Evans, you have the right to

23   continue in your plea of not guilty to the charges against

24   you.  If you do continue in your plea of not guilty, you

25   have a right to a trial on those charges.  You have the

1    right to be tried by a jury that would be made up of 12

2    citizens of this district.

3            You also have the right to a speedy trial.  What

4    that means is that if you did want to take your case to

5    trial, you'd get your trial in the next month or two.  You

6    would not have to wait any longer than that.

7            Do you understand that?

8    A.  Yes, sir.

9    Q.  All right.  You've also got the right to be represented

10   by an attorney at every stage of this proceeding:  before

11   trial, during trial, and after trial.  You have the right to

12   be represented by an attorney who you hire or, if you can't

13   afford to hire an attorney, then by an attorney who is

14   appointed to represent you at no cost to you.

15           Do you understand that?

16   A.  Yes, sir.

17   Q.  At trial you would be presumed to be innocent and I

18   would instruct the jurors that they must presume that you

19   are innocent.  The burden would be on the Government to

20   prove your guilt.  The burden would not be on you to prove

21   your innocence.  You would not have to prove anything at

22   your trial.

23           Not only would the burden be on the Government to

24   prove your guilt, but the Government would have to prove

25   your guilt beyond a reasonable doubt, and I'd instruct the

1    jurors that unless they were convinced of your guilt beyond

2    a reasonable doubt, that they would have to find you not

3    guilty.

4              Do you understand that?

5    A.  Yes, sir.

6    Q.  If you did go to trial, the Government would seek to

7    prove your guilt by calling witnesses who would come here to

8    court and testify against you and you'd have the right to

9    confront those witnesses.

10             What that means, Mr. Evans, is that you would have

11   the right to be physically present here in the courtroom

12   whenever anyone testified at your trial so you could see for

13   yourself and hear for yourself their testimony.  It also

14   means that your attorney, Mr. Zayed, would have the right to

15   ask questions of anyone who testified at your trial.

16             Do you understand that?

17   A.  Yes, sir.

18   Q.  You'd also have the right to remain silent at your

19   trial.  No one could force you to testify.  That would be

20   entirely your decision to make, whether to testify or not to

21   testify.

22             If you decided not to testify, your silence could

23   not be used against you.  In fact, if you wanted me to, I'd

24   instruct the jurors that when they were deciding whether

25   you'd been proven guilty, they could not consider the fact

1     that you chose not to testify.

2            Does that make sense?

3     A.  Yes, sir.

4     Q.  Although you'd not have to testify at trial or call

5     witnesses or present evidence, you would have the right to

6     do these things if you wished.  You would have the right to

7     take the stand and testify before the jury on your own

8     behalf, to tell them your side of the story.  You'd have the

9     right to call others to testify on your behalf.  And in

10    fact, you could subpoena witnesses; that is, you could get

11    an order from me compelling people, forcing people, to

12    testify at your trial whether they wanted to or not.

13           Do you understand that?

14    A.  Yes, sir.

15    Q.  Mr. Evans, if you did testify or call witnesses or

16    present any evidence at your trial, it's important for you

17    to understand that that would not change the burden of

18    proof.  The Government would still have the burden of

19    proving your guilt beyond a reasonable doubt.

20           Do you understand that?

21    A.  Yes, I do.

22    Q.  If you went to trial, you could not be convicted of any

23    charge unless every single member of the jury found that you

24    had been proven guilty of that charge beyond a reasonable

25    doubt.  In other words, any guilty verdict would have to be

1   unanimous, all 12 jurors would have to agree.

2           Do you understand that?

3   A.  Yes, sir.

4   Q.  Finally, Mr. Evans, and most importantly, if you plead

5   guilty and if I accept your plea, you'll stand convicted of

6   the charge to which you plead guilty.  You'll not get a

7   trial on that charge, or those charges, you'll give up all

8   of the rights that I've just described, you'll give up your

9   right to appeal any decision that any judge has already made

10  in your case, and you'll give up your right to file any

11  motions before trial, such as motions asking me to rule

12  whether certain evidence can or cannot be used against you.

13          Do you understand that if you plead guilty and

14  that if I accept your plea, you'll be giving up all of these

15  rights that I just described?

16  A.  Yes, I understand.

17  Q.  One of the other things that I'm obligated to review

18  with you, Mr. Evans, here this afternoon is the nature of

19  the charges that have been made against you, so I'm going to

20  do that now, okay?

21  A.  Yes, sir.

22  Q.  All right.  Mr. Evans, Count 1 of the indictment charges

23  you with conspiracy to distribute and possess with the

24  intent to distribute heroin in violation of Sections

25  841(a)(1), and 841(b)(1)(B), and 846 of Title 21 of the

1   United States Code.

2          For you to be convicted of this charge, the

3   Government would have to prove beyond a reasonable doubt

4   that from at least about December 1st, 2017 to at least

5   about November 30th, 2018, in the State and District of

6   Minnesota and elsewhere, you knowingly and intentionally

7   conspired to distribute and to possess with the intent to

8   distribute 100 grams or more of a mixture or substance

9   containing heroin, a controlled substance.

10          Count 3 of the indictment charges you with aiding

11   and abetting a felon in possession of a firearm in violation

12   of 18 U.S.C., Sections 2, 922(g)(1), and 924(a)(2), and also

13   being a felon in possession of a firearm.

14          Now, for you to be convicted of this charge -- and

15   here I'm speaking only of you possessing a firearm -- the

16   Government would have to prove beyond a reasonable doubt

17   that on or about August 23rd, 2018, in the State and

18   District of Minnesota and elsewhere, having been previously

19   convicted of a crime punishable by a term of imprisonment

20   for a term exceeding one year, that you knowingly possessed

21   in or affecting interstate or foreign commerce a firearm.

22          Mr. Zayed, is there any reason here today, do you

23   think, to go through Count 2 of the indictment?  I take it

24   there is not.

25          MR. ZAYED:  None, Your Honor.

1            THE COURT:  Okay.

2     BY THE COURT:

3     Q.  Mr. Evans, do you understand that these are the charges

4     against you in this case?

5     A.  Yes, sir, I do.

6     Q.  The law also requires me to review with you here this

7     afternoon the maximum penalties that can be imposed upon you

8     stemming from a conviction of these charges, and so I'm

9     going to do that now, okay?

10    A.  Yes.

11    Q.  All right.  If you plead guilty to these charges, you'll

12    be facing the following penalties as enhanced by the

13    information to establish prior conviction that the

14    Government has filed with respect to your prior convictions.

15            As to Count 1, a mandatory minimum imprisonment

16    term of five years and a maximum term of 40 years; a

17    supervised release term, a mandatory minimum term of four

18    years and a maximum of life; a fine of up to $5 million; a

19    mandatory special assessment of $100 due at the time of

20    sentencing.  I also could order you to pay the costs of

21    prosecution, imprisonment and supervision, you could become

22    ineligible for federal benefits, and finally, I could order

23    forfeiture of the property described in the indictment,

24    specifically including the firearms and ammunition described

25    in that document.

1          As to Count 3, which is the felon-in-possession

2    charge, the maximum term of imprisonment on that charge is

3    ten years; the minimum supervised release term is one year

4    and the maximum is three years; there is a fine that could

5    be imposed of up to $250,000.  Again, there is the mandatory

6    special assessment of $100 due at the time of sentencing;

7    again, I could order you to pay the costs of prosecution,

8    imprisonment and supervision; you could become ineligible

9    for federal benefits; and again, finally, I could order the

10   forfeiture of the property described in the indictment, and

11   that includes the firearms and ammunition described in that

12   document.

13          Mr. Evans, do you understand that these are the

14   penalties that might be imposed upon you if you plead

15   guilty?

16   A.  Yes, Your Honor.

17   Q.  I want to say --

18          THE COURT:  Yes, Mr. Folk.

19          MR. FOLK:  Your Honor, I'm sorry to interrupt.  I

20   may have misheard, but I thought I heard Your Honor mention

21   an enhancement that may have been filed and I just want to

22   be clear the Government had -- there have been no

23   enhancements filed in this case.

24          THE COURT:  Thank you.

25          MR. FOLK:  It doesn't change any of the other

1   information, but just to be clear.

2              THE COURT:  Understood.  Thank you for that

3   clarification.

4   BY THE COURT:

5   Q.  Mr. Evans, I want to say a couple of words about

6   supervised release.  That's what happens after you're

7   released from prison.  You go to prison, you serve your

8   time, you're released from prison, and then you're placed on

9   supervised release.

10             I'll decide how long you serve on supervised

11  release and I'll also decide what conditions you must follow

12  when you are on supervised release.  And I want to warn you

13  that if you violate any of the conditions of your supervised

14  release, you could be sent back to prison and kept in prison

15  for up to the length of the original supervised release

16  term, depending on the violation, without getting any credit

17  for the time that you already served on supervised release.

18             Do you understand that?

19  A.  Yes, I do.

20  Q.  I should also warn you that there's no parole in the

21  federal system.  Therefore, if you're sentenced to prison,

22  you'll have to serve your full sentence.  You'll not be

23  released early on parole.

24             Do you understand that?

25  A.  Yes, sir, I do.

1    Q.  Finally, I need to warn you that because you're a United

2    States citizen and because you've been charged with a

3    felony, if you plead guilty, you may lose your rights to

4    vote, to hold public office, to serve on a jury and to

5    possess any kind of weapon or ammunition.

6             Do you understand that?

7    A.  Yes, Your Honor.  I understand.

8    Q.  All right.  Mr. Evans, I understand that you've entered

9    into a plea agreement with the Government, is that right?

10   A.  Yes, sir.

11   Q.  Have you read the plea agreement?

12   A.  Yes, sir.

13   Q.  Has Mr. Zayed carefully gone through the plea agreement

14   and explained all of its terms to you?

15   A.  Yes, sir.

16   Q.  Has he answered all of your questions about the plea

17   agreement?

18   A.  Yes, sir.

19   Q.  And do you believe that you understand the terms of the

20   plea agreement?

21   A.  Yes, I do.

22   Q.  Just to avoid any misunderstandings, I'm going to ask

23   Ms. Bates to describe any important provisions in the plea

24   agreement that I've not already covered or that she thinks

25   it would be useful to cover here this afternoon.

1          THE COURT:  Ms. Bates?

2          MS. BATES:  Thank you, Your Honor.

3

4                    **E X A M I N A T I O N**

5     BY MS. BATES:

6     Q.  Good afternoon, Mr. Evans.

7     A.  Good afternoon, Miss.

8     Q.  You stated that you've had a thorough opportunity to go

9     over the plea agreement with Mr. Zayed, correct?

10    A.  Yes, ma'am.

11    Q.  And I'm sure that you went over the guideline

12    calculations in the plea agreement starting at page 5 with

13    Mr. Zayed previously.

14    A.  Yes, ma'am.

15    Q.  Now, you understand that you're being sentenced in

16    accordance with the Federal Sentencing Act with reference to

17    the United States Sentencing Guidelines, and those are

18    advisory guidelines for the Court.

19          You understand that?

20    A.  Yes, I do.

21    Q.  Which means that we can agree in the plea agreement to

22    the guidelines that we're going to go over today, but

23    ultimately it is up to the Court to decide what your

24    sentence will be.

25          You understand that?

1   A.  Yes, I do, Miss.

2   Q.  We're going to go over the guidelines for both Count 1

3   and Count 3, okay?

4   A.  Yes, ma'am.

5   Q.  For Count 1, the Base Offense Level is 24, but then two

6   points are added to the offense level because a dangerous

7   weapon was possessed in the course of the conspiracy, so

8   your total Base Offense Level is 26.

9        You understand that?

10  A.  Yes, ma'am.

11  Q.  For Count 2, your Base Offense Level is 14; however, the

12  firearm was stolen, which adds two points.  That leads us to

13  a Base Offense Level of 16, and then an additional four

14  points are added because the firearm was possessed in

15  connection with another felony offense.  That amounts to a

16  total Base Offense Level of 20.

17       You understand that?

18  A.  Yes, ma'am.

19       MR. ZAYED:  If I may, Ms. Bates, there's a typo in

20  the plea agreement on page 6.

21       MS. BATES:  Okay.  If you could show me where it

22  is.

23       MR. ZAYED:  Romanette ii.  It says "Count 2."

24  That should be "Count 3."

25       MS. BATES:  Oh, thank you.

1        MR. ZAYED:   The guideline range should be with

2   respect to Count 3, not Count 2.

3        MS. BATES:   You are right.   Thank you.

4   BY MS. BATES:

5   Q.   So we just went over the total Base Offense Level for

6   Count 3, okay?

7   A.   Yes.

8   Q.   So the total Base Offense Level for Count 3 is 20.

9        And then moving on to Chapter Three adjustments.

10   The Government believes that no Chapter Three adjustments

11   apply besides adjustments for acceptance of responsibility

12   which you can look to at letter (c) there.

13        And basically what acceptance of responsibility

14   means is that if you provide full, complete and truthful

15   disclosures to Probation and you testify truthfully during

16   the change of plea and your sentencing hearing, so today and

17   at your sentencing hearing in the future, and if you comply

18   with this agreement and undertake no acts inconsistent with

19   acceptance of responsibility before your sentencing, the

20   United States will recommend that you receive a two-level

21   reduction for acceptance of responsibility.

22        In addition to that, the United States will move

23   for an additional one-level reduction at sentencing because

24   you provided timely notice of your intent to enter a guilty

25   plea here today.   So in total, that would be three points

1    off of your total Base Offense Level.

2              Do you understand that?

3    A.  Yes, I do.

4    Q.  Now, you have reserved your right to argue that you

5    played a mitigating role in the charged offenses pursuant to

6    the guidelines, which means at sentencing you can argue that

7    you played a mitigating role and your total Base Offense

8    Level should be reduced because of that, but the United

9    States is not agreeing to that here today.

10             You understand that?

11   A.  Yes, I do, Miss.

12   Q.  Your Criminal History Category is VI for both Counts 1

13   and 3 based on all the information that the parties have

14   here today.

15             Now, of course, at sentencing the Court could

16   determine based on all the information that the Court

17   receives from Probation that you have a different Criminal

18   History Category, but here today all parties believe that

19   you have a Criminal History Category of VI.

20             Do you understand that?

21   A.  Yes, I do.

22   Q.  Now, if that's the case, your total guideline range for

23   Count 1 is 92 to 115 months' imprisonment, and for Count 3

24   it's 51 to 63 months' imprisonment.

25             Accordingly, your final guideline range would be

1    92 to 115 months' imprisonment, and again, you're reserving

2    the right to argue that that guideline range should be lower

3    because you played a mitigating role.

4              Do you understand that?

5    A.  Yes, I do.

6    Q.  Now, if your highest adjusted Base Offense Level is 23,

7    your fine range is $20,000 to $5 million, but again, if you

8    argue that you played a mitigating role, that fine range

9    could be lower.

10             Do you understand that?

11   A.  Yes, Miss.

12   Q.  And as to Count 1, the guidelines require a term of

13   supervised release of at least four years.  What that means

14   is that the guidelines recommend that to the Court, but

15   again, the ultimate determination is up to the Court.

16             You understand that?

17   A.  Yes, Miss.

18   Q.  Both parties, so the United States and you, have

19   reserved the right to make any departure motions and to

20   oppose any motions at sentencing, so that means that you

21   could argue for a sentence outside the guideline range and

22   so could the United States.

23             Do you understand that?

24   A.  Yes, I do, Miss.

25   Q.  You've also agreed to waive your right to obtain

1    information regarding this case after your conviction

2    pursuant to the Freedom of Information and Privacy Act.

3    Basically, what that means is that you can't use that

4    particular civil statute to try to come back and get

5    information the Government has pertaining to your case.

6              Do you understand that?

7    A.  Yes, I do.

8    Q.  Thank you.

9              MS. BATES:  Your Honor, at this time the

10   Government has nothing else to go over.

11             **F U R T H E R   E X A M I N A T I O N**

12   BY THE COURT:

13   Q.  Mr. Evans, are those the terms of the plea agreement as

14   you understand them?

15   A.  Yes, sir.

16   Q.  Other than what's contained in the plea agreement, has

17   the Government or anyone else made any promises to you in

18   order to get you to plead guilty here today?

19   A.  No, sir.

20   Q.  All right.  Mr. Evans, I want to be sure that you

21   understand the impact of the plea agreement on me with

22   respect to your sentencing, so I'm going to talk about that

23   now, all right?

24   A.  Yes.

25   Q.  First, I want to be sure that you understand that

1    although the Government and your attorney have the right to

2    make a recommendation about your sentence, I do not have to

3    accept their recommendations and I do not have to sentence

4    you according to the plea agreement.

5              Do you understand that?

6    A.  Yes, sir, I do.

7    Q.  As I sit here today, I don't know what sentence I will

8    impose.  I'll not determine your sentence until a

9    presentence investigation is completed and I get a

10   presentence report about you and we've had a sentencing

11   hearing, and since I have no idea what sentence I'll impose,

12   no one else does either, not Mr. Zayed and not the

13   Government.

14             Do you understand that?

15   A.  Yes, sir.

16   Q.  It's possible that I'll give you a sentence that is

17   longer than you are hoping for or expecting, and if I give

18   you such a sentence, you'll not be able to get out of your

19   guilty plea.  You might be able to appeal your sentence, but

20   no matter what sentence I give you, you will be bound by

21   your guilty plea.

22             Do you understand that?

23   A.  Yes, sir, I do.

24   Q.  Your plea agreement discusses the federal sentencing

25   guidelines and that's something you just talked about with

1   Ms. Bates, but I want to emphasize a couple of things about

2   those guidelines.

3          I'm going to look at the sentencing guidelines and

4   decide for myself what they say about your case.  What your

5   plea agreement says is not binding on me.  I'll make my own

6   decision.

7          Do you understand that?

8   A.  Yes, sir.

9   Q.  Here's what I'll do:  I'll first look at the sentencing

10  guidelines and decide what range they recommend in your

11  case.  I'll then look further at the guidelines, because

12  sometimes the guidelines recommend a sentence above or below

13  that range, what's called a "departure," and that's

14  something Ms. Bates referred to when she was asking you

15  questions, or walking through the terms of the plea

16  agreement with you I should say, and finally I'll decide

17  whether to follow the recommendation of the sentencing

18  guidelines.  It is just a recommendation.  It is not binding

19  on me.  In fact, I'm required to consider many things in

20  addition to the guidelines in arriving at an appropriate

21  sentence.  So you can't count on getting a guidelines

22  sentence.  You may get a sentence that's higher than the

23  guidelines recommend or lower than the guidelines recommend.

24          Do you understand that?

25  A.  Yes, Your Honor.

1   Q.  Okay.  After I impose the sentence, the Government will

2   have the right to appeal that sentence if it thinks I made a

3   mistake or gave you a sentence that's too short.

4            Do you understand that?

5   A.  Yes, sir.

6            THE COURT:  Has the plea agreement been signed?

7            MS. BATES:  Yes, Your Honor.

8            THE COURT:  I take it Mr. Evans needs to initial

9   the clerical correction.

10            MR. ZAYED:  That's correct, Your Honor.

11            THE COURT:  Okay.

12        (Government, Defendant and defense counsel initial

13   document)

14        (Document handed to the Court)

15   BY THE COURT:

16   Q.  Mr. Evans, I know you're sitting a ways away from me

17   right now, but I'm going to hold up the last page of that

18   plea agreement.

19            Is that your signature in the middle there on that

20   plea agreement?

21   A.  Yes, Your Honor.

22   Q.  Mr. Evans, before you can plead guilty pursuant to this

23   plea agreement, I have to determine that there's a factual

24   basis for your plea.  What that means is that I have to make

25   sure that you've committed the crime with which you're

1    charged and to which you're pleading guilty, so I'm now

2    going to ask Ms. Bates to ask you some questions about that

3    crime.

4              THE COURT:  Ms. Bates?

5              MS. BATES:  Thank you.

6              **F U R T H E R   E X A M I N A T I O N**

7    BY MS. BATES:

8    Q.  Mr. Evans, from approximately December 1st, 2017 through

9    November 30th of 2018, you conspired with Dwight Labon and

10   others to buy and sell heroin to individuals throughout the

11   Twin Cities and at other locations, correct?

12   A.  Yes, Miss.

13   Q.  You agree that you conspired to distribute and possess

14   with the intent to distribute over a hundred but less than

15   400 grams of heroin from that date of December 1st through

16   November 30th of 2018, that you did that voluntarily and

17   that you knew that your actions violated the law, correct?

18   A.  Yes, Miss.

19   Q.  Further, on August 23rd, 2018, the Minneapolis Police

20   Department took custody of your black Nissan Maxima,

21   correct?

22   A.  Yes, ma'am.

23   Q.  They executed a search warrant on that black Nissan

24   Maxima and recovered a firearm, correct?

25   A.  Yes, ma'am.

1    Q.  That firearm was a stolen Ruger SR9 semiautomatic pistol

2    and it was recovered from the ceiling lining of your Nissan,

3    correct?

4    A.  Yes, ma'am.

5    Q.  You received that firearm in late July of 2018 from an

6    individual who purchased heroin from your co-conspirator

7    Dwight Labon, correct?

8    A.  Yes, ma'am.

9    Q.  And in fact, you received a small amount of heroin from

10   Dwight Labon for agreeing to pick up that firearm and

11   transfer it to Dwight Labon, correct?

12   A.  Yes, ma'am.

13   Q.  That Ruger was manufactured in Arizona, and you would

14   agree that that means that the Ruger had to travel in

15   interstate or foreign commerce prior to your possession of

16   it, correct?

17   A.  Yes, Miss.

18   Q.  Prior to your possession of the firearm in late

19   July through August 23rd of 2018, you knew that you had been

20   convicted of at least four felony offenses that were

21   punishable by a term of imprisonment exceeding one year,

22   correct?

23   A.  Yes, ma'am.  Yes.  I'm sorry.

24   Q.  That's okay.  And that includes first-degree aggravated

25   robbery, third-degree controlled substance possession,

1    stalking, felony violation of a domestic abuse no-contact

2    order, and fourth-degree controlled substance possession,

3    correct?

4    A.  Yes, ma'am.

5    Q.  You stipulate and agree that you possessed the firearm

6    on July -- from late July of 2018 through August 23rd of

7    2018, and that your possession of it was knowing and

8    voluntary and that you knew that your actions violated the

9    law, correct?

10   A.  Yes, ma'am.

11              MS. BATES:  Your Honor, nothing further.

12              THE COURT:  Thank you.  Mr. Zayed, is there

13   anything further that you'd like to add or clarify for the

14   record before we move on?

15              MR. ZAYED:  Two points, Your Honor.  Mr. Evans

16   filed a series of motions.  I forgot to count.  Either 12 to

17   14 motions.

18              Mr. Evans, you understand that those motions, we

19   withdrew those motions based on this plea agreement and we

20   would no longer make those arguments to the judge, correct?

21              THE DEFENDANT:  Yes.

22              MR. ZAYED:  And the other point, Your Honor, is

23   that we do not -- and there's a footnote in the plea

24   agreement -- that we do not believe that the career offender

25   guidelines apply because two of those convictions are very

1    old, beyond the fifteen-year period, and that's reflected in

2    the footnote in the plea agreement.

3               THE COURT:  Understood.  Yes, I saw that.  Thank

4    you.

5                **F U R T H E R   E X A M I N A T I O N**

6    BY THE COURT:

7    Q.  Mr. Evans, are you making this plea voluntarily and of

8    your own free will?

9    A.  Yes, Your Honor.

10   Q.  Has anyone forced you, threatened you, coerced you or

11   done any violence to you or anyone else to get you to plead

12   guilty here today?

13   A.  No, sir.

14   Q.  Are you going to plead guilty because you are in fact

15   guilty of the crime charged?

16   A.  Yes, sir.

17              THE COURT:  Mr. Zayed, is there anything else that

18   you'd like me to cover with Mr. Evans before he enters his

19   plea?

20              MR. ZAYED:  No, Your Honor.  Thank you.

21              THE COURT:  Ms. Bates, anything further?

22              MS. BATES:  No, Your Honor.  Thank you.

23   BY THE COURT:

24   Q.  Mr. Evans, do you have any questions for me or for your

25   attorney before I ask for your plea?

1    A.  No, sir.

2    Q.  Mr. Evans, how then do you plead to Count 1 of the

3    indictment?  Do you plead guilty or not guilty?

4    A.  Guilty, sir.

5    Q.  And how do you plead to Count 3 of the indictment?  Do

6    you plead guilty or not guilty?

7    A.  I plead guilty.

8            THE COURT:  I find that the defendant, Willie Roy

9    Evans, is clearly mentally competent and capable of entering

10   an informed plea.  I find that he's aware of the nature of

11   the charges against him, the nature of these proceedings and

12   the consequences of his plea of guilty.  I find that his

13   plea of guilty is free, voluntary, knowing and informed, and

14   I find that the plea is supported by independent facts in

15   the record establishing all of the elements of the offenses.

16   Therefore, Mr. Evans, I accept your plea of guilty and I

17   find you guilty as charged.

18   BY THE COURT:

19   Q.  Mr. Evans, here's what's going to happen next:

20           The probation officer is going to conduct an

21   investigation and prepare a report that will help me to

22   decide on your sentence.  As part of that investigation, the

23   probation officer will interview you and you'll be required

24   to give information for the report.  Your attorney may be

25   present when you're interviewed.

1        After that report is prepared you'll have the

2   chance to read it and discuss it with Mr. Zayed.  If there's

3   anything in the report that you think is incorrect or

4   unfair, or if something's been left out of the report that

5   you want me to know about, you'll have the chance to file

6   objections to the report.  And before I decide on your

7   sentence I'll read not only the report, but any papers that

8   you or the Government have filed as well.  We'll then have a

9   sentencing hearing at which I'll impose the sentence.

10  Before I do that I'll give both you and your attorney a

11  chance to speak.

12        Do you understand that?

13  A.  Yes, sir.

14  Q.  Okay.

15        THE COURT:  My understanding is that Mr. Evans is

16  in custody.

17        Mr. Zayed, anything else here today?

18        MR. ZAYED:  No, Your Honor.  We plan on asking the

19  Court to modify the conditions of detention in the near

20  future.

21        THE COURT:  Understood.

22        MR. ZAYED:  Thank you.

23        THE COURT:  Thank you.  Ms. Bates, anything

24  further here today?

25        MS. BATES:  No, thank you.

1          THE COURT:  All right.  Then Mr. Evans is remanded

2     to the custody of the United States Marshals and we'll stand

3     adjourned.  Thanks, everyone.

4          (Proceedings concluded at 2:42 p.m.)

5                    *      *      *      *

6

7

8                    C  E  R  T  I  F  I  C  A  T  E

9

10

11     I, **TIMOTHY J. WILLETTE,** Official Court Reporter

12          for the United States District Court, do hereby

13          certify that the foregoing pages are a true and

14          accurate transcription of my shorthand notes,

15          taken in the aforementioned matter, to the best

16          of my skill and ability.

17

18

19               */s/ Timothy J. Willette*

20

          **TIMOTHY J. WILLETTE, RDR, CRR, CRC**
21          Official Court Reporter - U.S. District Court
          Warren E. Burger Federal Building & U.S. Courthouse
22               316 North Robert Street - Suite 146
                   St. Paul, Minnesota  55101
23                      651.848.1224

24

25